Robert C. HOWELL, Plaintiff,

v.

SAM'S CLUB # 8160/WAL–MART, Defendant.

Civil Action No. 95–4440.

United States District Court, E.D. Pennsylvania.

March 3, 1997.

Kathleen D. Dautrich, Reading, PA, Robert C. Howell, Mohnton, PA, for Robert C. Howell.

Mark Blondman, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Defendant.

## MEMORANDUM

CAHN, Chief Judge.

### I. INTRODUCTION

Plaintiff, Robert C. Howell, brought this lawsuit against his former employer, Defendant Sam's Club # 8160/Wal–Mart ("Sam's Club"), alleging Sam's Club discharged him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.[1] Sam's Club has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the court grants Sam's Club's Motion.

### II. FACTS

Taken in the light most favorable to the non-moving party, the facts are as follows. In 1981, while working for the United States Navy, Plaintiff Robert Howell injured his back after falling through a catwalk that was thirty-four feet above the ground. (Howell Dep. pg. 106). He spent three weeks in a traction cast, and the Navy put him on limited duty after he was discharged from the hospital. After Howell left the Navy in 1984, he worked in civilian jobs, and he only missed "one or two days here and there" because of his back condition. (Howell Dep. pg. 109).

In 1990, Howell applied to be a maintenance worker at the Sam's Club facility in Reading/Temple Pennsylvania. On his employment application, Howell disclosed that he had fractured his skull in 1965, but stated he was "okay." Howell checked the "No" box to a question on the employment application that asked whether the applicant had "any physical or mental condition which may limit your ability to perform the job applied for or pose a potential risk to other employees." Howell did not disclose on his employment application that he had a spinal disc condition due to his Naval injury, or that he had a knee impairment.[2] He claims he did not disclose these conditions on the employment application because Harry Gordon, a general manager at Sam's Club, told him that he would not be hired if he disclosed these conditions. (Howell Dep. pg. 71). Gordon asked Howell if his back and knee problems would prevent him (Howell) from carrying out the duties of a maintenance worker. Howell replied that he did not think his impairments would impede his ability to do the job. (Howell Dep. pgs. 75–77). Howell began working for Sam's Club in October 1990.

In January 1993, Howell transferred to the Sam's Club facility in Pinellas Park, Florida. While working in Pinellas Park, Howell was discharged for a remark that he allegedly made in the breakroom.[3] After Howell appealed his discharge, Sam's Club converted his discharge to a "decision making day" so Howell was allowed to remain at Sam's Club. (Howell Dep. pg. 39). Howell signed a statement acknowledging that several partners at Sam's Club had concerns about Howell making racial and sexual comments, and Howell was put on notice that any further inappropriate comments would result in his termination. (Howell Dep. pgs. 44–45). In April 1993, Howell was transferred from the Pinellas Park facility to one in Clearwater, Florida. He stayed in Clearwater until the end of 1993, at which time he moved back to the Reading/Temple facility.

---

1. Howell's Second Amended Complaint also alleges a state law claim of wrongful discharge, but Howell has orally informed the court that he will withdraw this claim.

2. Howell suffered a broken kneecap while serving with the United States Marine Corps in 1967. (Howell Dep. pg. 76).

3. The parties dispute the precise nature of the remark, but this dispute need not be resolved in order to rule on the summary judgment motion.

In February 1994, Sam's Club discharged Howell because Howell was allegedly involved in an incident of sexual harassment. Howell alleges that the reason given by Sam's Club for his termination is pretextual. Howell claims he was terminated because he told Sam's Club general manager Elwood Dupuis that snow should be removed from the roof of Sam's Club, a decision which cost the company $13,000 in snow removal costs, and because Dupuis was afraid that Howell would cost Sam's Club money if Howell filed a workman's compensation claim after he hurt his back shovelling snow. (Howell Dep. pgs. 25–26). Howell did not miss a single day of work as a result of his back condition during the entire time he worked for Sam's Club.[4] (Howell Dep. pg. 110).

### III. STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the case. *Id.* Any dispute over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Connors v. Fawn Mining Corp.,* 30 F.3d 483, 489 (3d Cir.1994), *citing Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

When considering a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. The moving party bears the burden of " 'showing'—that is, pointing out to the dis-trict court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Summary judgment should be directed "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### IV. AMERICANS WITH DISABILITIES ACT

Sam's Club contends that summary judgment is appropriate because Howell has failed to set forth a prima facie case under the ADA.

[T]o establish a prima facie case for discriminatory employment termination, the plaintiff must prove by a preponderance of the evidence that

(1) he belongs to a protected class;

(2) he was qualified for the position;

(3) he was dismissed despite being qualified; and

(4) he was ultimately replaced by a person sufficiently outside the protected class to create an inference of discrimination.

*Lawrence v. National Westminster Bank New Jersey,* 98 F.3d 61, 68 (3d Cir.1996) (citation omitted). Sam's Club argues that Howell has failed to establish that he is a member of the protected class.[5] If a plaintiff establishes a prima facie case of unlawful discrimination, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the

---

4. While at work in 1991, Howell was rendered unconscious for about two minutes after a steel beam fell on him. (Howell Dep. pgs. 98–99). Although Howell "hurt pretty bad," he did not go to the doctor or receive workman's compensation for the injury. (Howell Dep. pg. 99).

5. Sam's Club does not contest the second and third elements necessary to establish a prima

facie case under the ADA. Neither party has presented any evidence concerning the fourth element of the prima facie case—that Howell was replaced by someone outside of the protected class. For the purposes of this motion, however, the court will assume that Howell has satisfied this element of the prima facie case.

plaintiff's rejection. *Olson v. General Electric Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

> Once the employer articulates a legitimate reason for the unfavorable employment decision, the plaintiff must show by a preponderance of the evidence that the employer's proffered explanation was pretextual. In order to defeat a summary judgment motion after the defendant answers plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Olson*, 101 F.3d at 951 (internal citations omitted).

The court must first determine whether a reasonable jury could conclude that Howell is a member of the protected class, i.e., that he is disabled. The ADA defines the term "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or,

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Howell contends that he is disabled under all three prongs of the disability definition. Each of these prongs will be addressed in turn.

**6.** It should be noted that Sam's Club required the use of the support belt.

**7.** In his affidavit, Howell alleges he had other physical limitations while he worked for Sam's Club, but Sam's Club argues that Howell's deposition testimony reveals that his impairments only had a significant impact on his ability to take care of himself after he underwent back surgery in 1995, one year after he left Sam's Club. *See* Sam's Club's Reply at 4–5. The court agrees with Sam's Club's position as it relates to

## A. SUBSTANTIALLY LIMITED IN A MAJOR LIFE ACTIVITY

"[A]n individual is substantially limited in a major life activity if he is '[u]nable to perform a major life activity that the average person in the general population can perform' or is '[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996), *quoting* 29 C.F.R. § 1630.2(j).

Howell has not clearly set forth the major life activities in which he allegedly faces substantial limitations, but based on Howell's filings with this court, the court will assume that Howell is alleging he is substantially limited in caring for himself, walking, and working. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(i) (Major life activities include, but are not limited to, caring for oneself, walking, and working).

■ Howell supports his disability claim with his affidavit, which states that while he worked for Sam's Club, his back and knee conditions resulted in numbness to his left knee, which continued to his calf and left foot; arthritis and frequent pain in his left knee; a limited range of motion; and, he was not able to lift over twenty-five pounds. (Howell Aff. ¶¶ 2, 5, 8). Howell wore a back brace and support belt while working.[6] (Howell Aff. ¶ 3). He needed a second person's assistance in performing job tasks that most people could perform alone, (Howell Aff. ¶ 8), and the pain and pressure in his back made it difficult to breathe at times. (Howell Dep. pg. 125). In addition, his wife would sometimes have to help him put on his trousers and tie his shoes. (Howell Aff. ¶ 7).[7]

Howell's ability to walk long distances, stand or sit for long periods of time, climb stairs, put his shoes and socks on, and take a shower without assistance. *See* Howell Dep. pgs. 125–27 (describing Howell's limitations after undergoing back surgery in 1995). While the court must draw all justifiable inferences in favor of the non-moving party, the court is not required to turn a blind eye to contradictions in a party's submissions to the court. *See Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir.1988) (Affiant's statements which contradict

As further evidence of his disability, Howell points to a 1984 document from the Veterans' Administration granting him compensation for a twenty percent disability due to his spinal condition. Howell gave this document to Sam's Club when he applied for employment in October 1990. Four months after beginning his job, Howell filled out a tax document in which he wrote he had a twenty percent disability from a spinal disc impairment. In addition, Sam's Club received an award from the National Disabled American Veterans for hiring a disabled veteran (Howell), and Howell has had a Disabled American Veteran license plate on his car since 1984. As will be discussed below, the court finds that based on this evidence, no reasonable jury could conclude Howell was substantially limited in caring for himself, walking, or working during the time he was employed at Sam's Club.

### 1. CARING FOR ONESELF

■ Howell has failed to raise a genuine issue of material fact as to whether he was substantially limited in the ability to care for himself while he worked for Sam's Club. He has presented no medical evidence documenting his limitations; rather, he relies on his own affidavit in which he avers he needs assistance putting on his trousers and tying his shoes. However, Howell conceded that before his surgery in 1995, he used to walk 20–22 miles a day while at Sam's Club, was able to climb stairs, put his shoes and socks on, and take a shower by himself. (Howell Dep. pgs. 125–27). No reasonable jury could find that Howell was substantially limited in

caring for himself while he worked for Sam's Club. *See Hatfield v. Quantum Chem. Corp.*, 920 F.Supp. 108, 110 (S.D.Tex.1996) (plaintiff not substantially limited in caring for himself when he can drive a car, groom himself, have lunch with friends, cook meals for himself and family, work in his yard, and clean his house).[8]

### 2. WALKING

■ As noted above, Howell walked 20–22 miles each day while at Sam's Club. He walked with a limp, but did not need a cane. (Howell Dep. pg. 123). Howell's contention that he was substantially limited in the major life activity of walking cannot prevail in light of *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir.1996), in which the Third Circuit Court of Appeals affirmed summary judgment against Kelly. Kelly, who was discharged by his employer, alleged he was substantially limited in the major life activity of walking. The court found that Kelly, who could not walk more than a mile, could not jog, and had to pace himself climbing stairs, was not substantially limited in the major life activity of walking. *Id.* at 106. As was the case with Howell when he worked at Sam's Club, Kelly did not require any special devices like a cane or crutches to aid him in walking. *Id.* The court in *Kelly* relied in part on the ADA regulations, which state that "an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity

prior deposition testimony and for which no satisfactory explanation is offered do not create genuine issue of material fact). Howell has not explained the inconsistencies between his deposition testimony and his affidavit. As a result, the court need not consider those limitations in Howell's affidavit that are at odds with his prior deposition testimony.

8. Howell relies on *Perez v. Philadelphia Housing Auth.*, 677 F.Supp. 357, 360 (E.D.Pa.1987), *aff'd*, 841 F.2d 1120 (3d Cir.1988) (table), to support his claim that a person whose back condition causes pain and affects his ability to work and his daily life activities is disabled. *Perez* was decided under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, not the ADA, but the standard for determining disability under the two statutes is virtually identical. While the court in *Perez* did

not describe in detail the extent of Perez's limitations, there was still far more evidence of a disability in *Perez* than in the instant action. Perez, a receptionist-clerk, missed two months of work after her back injury and went back to work for approximately ten days before she returned to injured on duty status. *Id.* at 359. Her complaints of back problems were supported by the deposition testimony of her orthopedist and a neurologist consultant. *Id.* at 360 n. 5. The court found Perez's back pain affected her ability to walk, sit, stand, drive, care for her home and child, and engage in leisure pastimes. *Id.* at 360. By contrast, Howell did not miss any work due to his back impairments and has not presented any evidence from medical or vocational personnel documenting the limitations he faced due to his impairments.

of walking." *Id., quoting* 29 C.F.R.App. § 1630.2(j).

In the instant action, it is undisputed that Howell was able to walk 20–22 miles every day without any aid such as a cane or crutches while he worked for Sam's Club; consequently, this court concludes that no reasonable jury could find Howell was substantially limited in the major life activity of walking.

### 3. *WORKING*

■ · Howell also claims he is substantially limited in the major life activity of working. When faced with this claim, a court must determine if the plaintiff is:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

When determining if an individual is substantially limited in the major life activity of working, a court may consider the geographical area to which the individual has reasonable access. 29 C.F.R. § 1630.2(j)(3)(ii)(A). In addition, a court may consider "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs)." 29 C.F.R. § 1630.2(j)(3)(ii)(B).

Howell avers that he could not lift over twenty-five pounds, frequently needed a second person's assistance in performing job-related tasks which most people could perform alone, and had to take his scheduled breaks due to back pain that continued down his left leg. (Howell Aff. ¶¶ 4, 8). According to Howell, he asked management for help performing his tasks when he had pain in his back and leg. (Howell Aff. ¶ 9).

Despite these limitations, Howell testified at his deposition that he was able to carry out his job responsibilities.[9] Howell did not miss a single day of work at Sam's Club on account of his back impairment. (Howell Dep. pg. 110). Furthermore, Howell has not presented any evidence that Sam's Club personnel were dissatisfied with his ability to do the work assigned to him.

Howell claims his impairments disqualify him from performing heavy labor jobs so he is substantially limited in his ability to work. He relies on ADA regulations which state, "[A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs." 29 C.F.R.App. § 1630.2(j).

■ Howell has not presented any medical or occupational support for his claim that he is unable to perform heavy labor jobs. While his affidavit states he has a limited range of motion and cannot lift over twenty-five pounds, these claims are also unsupported by medical documentation of any kind.[10] More-

9. Howell testified as follows:

Q: Were you ever significantly restricted in your ability to perform maintenance work as a result of the back injury while at Sam's?
A: No, sir.
Q: So am I correct, Mr. Howell, that while it may have been painful to you at times to do the job, you always were able to perform the job assigned to you at Sam's?
A: Yes, sir. ·
Howell Dep. pg. 112.

10. Even a medically documented, moderate lifting restriction is not sufficient to withstand summary judgment if the employee cannot demonstrate how the lifting restriction substantially limits his or her ability to engage in the major

life activity of working. *See, e.g., O'Dell v. Altec Industries, Inc.,* 1995 WL 611341, at *1 (W.D.Mo. Oct. 16, 1995) (doctor restricted plaintiff from lifting up to thirty-five pounds frequently and up to fifty pounds occasionally); *Czopek v. General Electric Co.,* 1995 WL 374036, at *1–2 (N.D.Ill. June 21, 1995) (employee not disabled for purposes of the ADA even though medical personnel directed plaintiff to avoid strenuous work and heavy lifting); *Aucutt v. Six Flags Over Mid-America, Inc.,* 869 F.Supp. 736, 744 (E.D.Mo. 1994) (employee claimed he had angina, high blood pressure, coronary artery disease, and his doctor restricted him from lifting more than twenty-five pounds), *aff'd,* 85 F.3d 1311 (8th Cir. 1996); *see also Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346, 349 (4th Cir.

over, Howell's impairments did not prevent him from carrying out his maintenance job duties while at Sam's Club, albeit with the occasional need for help from co-workers. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir.1995) ("[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working."). Furthermore, Howell has not presented any evidence detailing the class of jobs from which he is foreclosed, i.e., the number and types of jobs utilizing similar training, knowledge, skills or abilities within his geographical area that he is disqualified from holding because of his impairment.[11] To the contrary, Howell testified that he held civilian jobs after he left the Navy in 1984 and, after being discharged from Sam's Club, held a job with a company that installed aluminum siding and windows. (Howell Dep. pgs. 109, 166–67).

While the court is sympathetic to the fact that Howell sometimes had to endure pain while he worked, there is simply not enough evidence to create a genuine issue of material fact as to whether Howell was substantially limited in the major life activity of working. Howell was able to carry out his job functions at Sam's Club and did not present any evidence that he was foreclosed from pursuing other jobs due to his impairments.

## B. *RECORD OF IMPAIRMENT*

■ A plaintiff attempting to meet the second prong of the ADA disability definition—having a record of impairment—must demonstrate "a history of, or [be] misclassified as having, a mental or physical impairment that substantially limits one or more major life activity." 29 C.F.R. § 1630.2(k). Howell asserts that the combination of his letter from the Veterans' Administration stating he had a twenty percent disability due to his spinal disc condition, the tax document that he filled out while working for Sam's Club, the award Sam's Club received for hiring a disabled veteran, and his Disabled American Veteran license plate are sufficient to create a genuine issue of material fact as to whether Howell has established a record of impairment. This court disagrees.

■ Howell argues that the Veterans' Administration letter is an administrative determination of disability that is entitled to recognition by this court. However, "records of disability findings and classifications made in other proceedings do not necessarily amount to a record of impairment" under the ADA. *Dotson v. Electro–Wire Products*, 890 F.Supp. 982, 990 (D.Kan.1995). According to the ADA regulations:

The fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of "disability" under part 1630. Other statutes, regulations and programs may have a definition of 'disability' that is not the same as the definition set forth in the ADA and contained in part 1630. Accordingly, in order for an individual who has been classified in a record as 'disabled' for some other purpose to be considered disabled for purposes of part 1630, the impairment indicated in the record must be a physical

1996) ("Like the Eighth Circuit, we hold, as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity.") (citation omitted).

11. Howell has presented even less evidence concerning his inability to perform a class of jobs than was the case in *Bolton v. Scrivner, Inc.*, 36 F.3d 939 (10th Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). Bolton's evidence supporting his disability included one doctor's opinion that due to Bolton's pain, numbness, and limited ability to lift weight, he "was not ready to return to any kind of employment." *Id.* at 943. Another doctor concluded that Bolton "cannot return to any work where he has to stand up on a concrete floor all day." *Id.* Despite this evidence, the Tenth Circuit Court of Appeals affirmed summary judgment in favor of the employer, holding that Bolton did not show he was restricted from performing a class of jobs. *Id.* at 944. The court noted that Bolton's evidence did not address his vocational training, the geographical area to which he had access, or the number and types of jobs requiring similar training from which he was disqualified because of his impairment. *Id.* at 944.

or mental impairment that substantially limits one or more of the individual's major life activities.

29 C.F.R. Pt. 1630, App. § 1630.2(k). Thus, the fact that the Veterans' Administration determined that Howell suffered from a twenty percent disability in 1984 does not compel this court to conclude that Howell has established a record of impairment under the ADA. To the contrary, the Veterans' Administration letter does not describe the limitations that Howell faced in any major life activity as a result of his spinal disc condition, nor does it give any prognosis concerning his impairment.

Similarly, the tax document, the award presented to Sam's Club, and Howell's Disabled American Veteran license plate do not give any information by which the court can conclude there is a genuine issue of material fact as to whether Howell has a record of impairment, because none of these items discuss how Howell's impairments substantially limit any of his major life activities.

■ Summary judgment in favor of the employer is appropriate if the employee's record of impairment does not demonstrate a substantial limitation in major life activities. *See, e.g., Mobley v. Bd. of Regents of Univ. System of Georgia*, 924 F.Supp. 1179, 1188 (S.D.Ga.1996) (three letters by plaintiff's doctor to employer does not create record of impairment because the letters "provide[d] little in the way of medical history [or] useful clinical evaluation.... Such documentation is simply too sketchy and incomplete. As such, the letters can hardly be said to create a record of disability under the ADA."); *Dotson*, 890 F.Supp. at 990–91 (one doctor's note restricting plaintiff from doing "hard physical labor" does not create record of impairment); *Flasza v. TNT Holland Motor Express, Inc.*, 159 F.R.D. 672, 677–78 (N.D.Ill.1994) (report in plaintiff's file by background investigator hired by employer that revealed plaintiff received workers' compensation for a 15% loss of right leg, 5% loss of left arm, and 20% loss of left little finger was insufficient to create record of impairment). Since the evidence Howell relies upon does not describe how he is substantially limited in any major life activity, he has not raised a genuine issue of

material fact as to whether he has a record of impairment under the ADA.

## C. *REGARDED AS DISABLED*

■ The third prong of the disability definition—being regarded as having an impairment that substantially limits a major life activity—requires a plaintiff to demonstrate he or she has:

(1) a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) none of the impairments defined [by the regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. §§ 1630.2(*l*)(1)–(3). Howell's opposition to summary judgment does not claim that he is disabled under 29 C.F.R. § 1630.2(*l*)(2) or § 1630.2(*l*)(3). Rather, the question at issue is whether Sam's Club treated Howell as substantially limited in his ability to engage in a major life activity. *See Kelly*, 94 F.3d at 108–09 ("Our analysis of [plaintiff's] claim [under 29 C.F.R. § 1630.2(*l*)(1) ] focuses not on [the plaintiff] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him.") (citation omitted). Based on the evidence presented, the major life activity of working is the only activity in which Howell could conceivably claim Sam's Club regarded him as being substantially limited.

Howell has demonstrated that employees of Sam's Club were aware that Howell had back and knee impairments. For instance, at the time Howell applied for the position at Sam's Club, he informed general manager Harry Gordon about his back and knee conditions. (Howell Dep. pg. 71); Elliot Nailen, Howell's manager in the Pinellas Park facility, asked Howell how his back was feeling on numerous occasions after Howell injured himself falling off a ladder. (Howell Dep. pgs. 113–14); Howell averred that he would

complain to Sam's Club management that he needed help performing his job when he had back and leg pain. (Howell Aff. ¶ 9); Sam's Club conducted its recognition ceremony for hiring a disabled veteran (Howell) in front of the entire warehouse. (Howell Dep. pgs. 91–92); and, employees and managers of Sam's Club asked Howell why he had a Disabled American Veteran license plate on his car. (Howell Aff. ¶ 6).

■ While employees of Sam's Club knew that Howell suffered from impairments, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly*, 94 F.3d at 109 (citations omitted). Rather, to establish that the employer regarded the plaintiff as being substantially limited in the major life activity of working, the plaintiff must show "that [the employer] regarded him as being substantially limited in performing either a class of jobs or a broad range of jobs in various classes." *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1445 (10th Cir.1996).

In *MacDonald*, the plaintiff, an aircraft mechanic, claimed his employer regarded him as being substantially limited in the major life activity of working. *Id.* at 1443. To support his claim, plaintiff testified that six months before he was discharged, he told his supervisor that he thought his cataract was preventing him from performing his job as an aircraft mechanic, and that his impaired vision caused him to fail a physical so that he could not be certified to taxi aircraft. *Id.* at 1445. As a result, the defendant did not allow plaintiff to taxi aircraft, but the plaintiff admitted that taxiing aircraft was not a necessary part of being an aircraft mechanic. *Id.* The Tenth Circuit Court of Appeals affirmed summary judgment in favor of the defendant. The court found that even though the defendant did not allow the plaintiff to taxi aircraft, taxiing aircraft was a single, particular job rather than "a class of

jobs" or "a broad range of jobs in various classes." *Id., citing* 29 C.F.R. § 1630.2(j)(3)(i). Consequently, the evidence could not establish that the defendant regarded the plaintiff as substantially limited in his ability to perform the major life activity of working. *Id.*

Howell's case stands in stark contrast to that of the plaintiff in *Olson, supra.* In *Olson*, the Third Circuit Court of Appeals held that a genuine issue of material fact existed as to whether the employer, General Electric ("GE"), regarded the employee, Olson, as disabled. While working for GE, Olson was hospitalized for four months due to depression. *Olson*, 101 F.3d at 949. A few months after leaving the hospital, Olson and hundreds of others were laid off as part of a reduction in force. *Id.* Approximately one year after being laid off, Olson applied and interviewed for a Quality Assurance Specialist position at GE. *Id.* Olson alleged that his prior supervisor at GE, Sansoni, spent about one-third of the time during the interview asking Olson about his medical condition. *Id.* at 954. In addition, Sansoni had previously given Olson a performance evaluation which questioned Olson's commitment to his job in light of his illness-related absences. *Id.* Sansoni recommended a candidate other than Olson to fill the Quality Assurance Specialist position, and that candidate was eventually hired. *Id.* Although Sansoni was not responsible for making the final hiring decision, the court found that a genuine issue of material fact existed because Sansoni could have perceived Olson as disabled, thereby affecting his recommendation as to which candidate should be hired. *Id.* at 955.

■ No such situation is present in the instant action because Howell has not pointed to any evidence that Sam's Club perceived him as having an impairment that substantially limited his ability to work. Howell testified that he was able to carry out his job duties, and Howell has not suggested that Sam's Club was dissatisfied with his ability to do the work.[12] Furthermore, unlike the de-

---

12. Howell alleges that Elwood Dupuis, a general manager at Sam's Club, told another employee that Sam's Club "had to get rid of the fat, old[ ] bastard (Howell) before it cost[s] Wal*Mart mon-

ey." (Howell Dep. pgs. 28–29). Although this alleged comment reflects hostility toward Howell, it does not create a genuine issue of material

fendant in *MacDonald, supra,* Sam's Club did not place any restrictions on Howell's job duties.[13] The fact that Howell occasionally required assistance lifting objects does not create a genuine issue of material fact because there is no evidence that Sam's Club perceived Howell as substantially limited in performing either a class of jobs or a broad range of jobs in various classes. Thus, no reasonable jury could find Howell disabled under the third prong of the disability definition.

Howell has failed to create a genuine issue of material fact as to whether he is disabled under the ADA. Since Howell has not set forth a prima facie case of discrimination under the ADA, Sam's Club is entitled to judgment as a matter of law.[14]

## V. CONCLUSION

For the aforementioned reasons, Sam's Club's Motion for Summary Judgment is granted. An appropriate order follows.

fact as to whether Sam's Club regarded Howell as being unable to perform his job.

**13.** *See Dotson,* 890 F.Supp. at 991 ("There is no evidence from which the court could reasonably infer that the defendants perceived [plaintiff] as disabled. Upon receipt of the physician's note, the defendants did not change [plaintiff's] job duties or take any other actions which could indicate that they considered her incapable of

doing the general type of employment involved.").

**14.** Consequently, the court need not determine if Howell has cast sufficient doubt upon Sam's Club's stated reason for his discharge to withstand summary judgment. The court does observe, however, that the evidence supporting Sam's Club's proffered reason for discharging Howell appears to be less than persuasive.